ANTONIO HARRIS,

        Plaintiff,

        v.        Case No. 06-C-1290

DETECTIVE LIBAL,
OFFICER ROOSEVELT JENKINS,
OFFICER SEAN BURGER, and
PROBATION OFFICER KRISTINA KADO,

        Defendants.

ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS, DISMISSING DEFENDANTS LIBAL AND KADO AND ORDERING THE UNITED STATES MARSHAL TO SERVE THE REMAINING DEFENDANTS

Plaintiff, Antonio Harris, in this *pro se* civil rights action has paid the initial partial filing fee of $10.89.[1] Now, the court must screen the complaint inasmuch as the plaintiff is a prisoner seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Such complaints or a portion thereof must be dismissed if the plaintiff/prisoner raises claims that are legally "frivolous or malicious," fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997). The court may,

---

[1] The plaintiff has submitted a letter to the court asking whether it received two disbursement of $10.89 from the institution where he is confined and, if so, he requests that he receive a refund of one of the $10.89 disbursements. (Doc. # 8.) To date, the court has received only one payment of $10.89 as the initial partial filing fee in this case. Thus, a refund is not warranted.

therefore, dismiss a claim as frivolous where it is based on a indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." *Lindell v. McCallum*, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citations omitted).

A complaint, or portion thereof, should be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, *Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).

To state a claim for relief under 42 U.S.C. § 1983, plaintiffs must allege: 1) that they were deprived of a right secured by the Constitution or laws of the United States, and 2) that the deprivation was visited upon them by a person acting under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's *pro se* allegations, however inartfully pleaded, a liberal construction. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." This statement must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)

(quoting *Conley*, 355 U.S. at 47); *see also Thomson v. Washington*, 362 F.3d 969, 970-71 (7th Cir. 2004) (no heightened pleading requirement for *pro se* prisoner civil rights complaint). Of course, if a complaint pleads facts that show that a plaintiff does not have a claim, the complaint should be dismissed "without further ado." *Thomson*, 362 F.3d at 970.

In ths case, the plaintiff's allegations stem from his arrest on July 8, 2005. According to the complaint, the plaintiff was approached by defendants Jenkins and Burger while walking toward the home of a friend in Milwaukee on July 8, 2005. The complaint adds that defendant "Jenkins reached straight into [the plaintiff's] left front pant [sic] pocket and retrieved $424.00 in cash" and then searched plaintiff's friend. (Complaint at 6.) Officer Burger then observed that plaintiff was wearing an ankle bracelet and asked him if he was on probation or parole. Plaintiff informed him that he was on parole and Officer Burger told him that, as a parolee, he wasn't allowed to keep over $100 in his possession.

Thereafter, Officer Burger allegedly placed handcuffs on the plaintiff and his friend and informed them that they were going to be taken "to the station to be given tickets for loitering" even though the resident of the house they were approaching had notified the officers that she knew the plaintiff and his friend and was expecting them. (Complaint Attachment at 1.) When the plaintiff arrived at the police station, he and his friend were taken into the restroom and strip searched. Later, when plaintiff was in his cell, defendant Jenkins informed him that he was being charged with possession with intent to distribute because they had found cocaine in the restroom where he had been searched. Additionally, plaintiff was informed that a "VOP [violation of parole] warrant for [his] arrest" had been issued. (Complaint Attachment at 2.) However, according to the plaintiff's parole officer, Kristina Kado, whom he met on July 12, 2005, she had not issued a VOP warrant.

3

Plaintiff's preliminary hearing was conducted on August 1, 2005. At the hearing, defendant Jenkins stated that he arrested the plaintiff originally for a "violation of probation warrant" and that there was "no other reason why plaintiff was arrested." (Complaint Attachment at 3.) The transcripts of the preliminary hearing,[2] reveal that, at the hearing, defendant Jenkins testified that while waiting to be booked at the police station, the plaintiff informed him that he had "20 rocks of suspected cocaine base in his buttocks area" and that the plaintiff removed them and gave them to Officer Burger. Ultimately, the judge who presided over the hearing found probable cause to believe that a felony had been committed in Milwaukee County relating to the possession of a controlled substance and ordered the plaintiff bound over for trial.[3]

The plaintiff alleges that the defendants' conduct demonstrates that they "manipulate[d] the system of justice and . . . conspired to obstruct justice which lead [sic] to a causation of having [him] incarcerated thus denying [his] right to liberty in the U.S. Constitution." As relief, plaintiff asks for the following: (1) a court order directing the defendants to produce the VOP warrant;[4] (2) $5,000,000 in damages from each defendant; and (3) $5,000,000 in punitive damages. (Complaint at 7.)

As the court reads the complaint, plaintiff appears to be alleging that he was the victim of false arrest because the arrest was based on a nonexistent violation of parole

---

[2] The plaintiff attached part of the hearing transcripts as exhibits to the complaint. As a result, these documents are deemed to be a part of the complaint and are properly considered by the court at the screening stage. Fed.R.Civ.P. 10(c); *see also Centers v. Centennial Mortgage, Inc.*, 398 F.3d 930, 933 (7th Cir.2005); *Int'l Mktg. Ltd. v. Archer-Daniels-Midland Co., Inc.*, 192 F.3d 724, 729 (7th Cir.1999).

[3] The complaint does not allege what occurred after the preliminary hearing in connection with this charge. However, according to Wisconsin Circuit Court Access, a sentencing hearing is scheduled regarding the charge on April 17, 2007. *See State of Wisconsin v. Antonio D. Harris*, Case No. 2005 CF 003822.

[4] This request is more akin to a discovery request than a demand for relief.

4

warrant. In addition, he appears to allege that the arrest also resulted from a conspiracy to deprive him of his liberty.

## I. § 2254 and § 1983

Because the plaintiff's claim implicates his state criminal case, a threshold question is whether plaintiff may pursue a claim under 42 U.S.C. § 1983 or whether he must instead file a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Notably, the plaintiff is not seeking release from prison, only money damages and an order to produce a copy of the VOP warrant. Regardless, the plaintiff may not pursue an action under § 1983 if a judgment by this court would necessarily imply the invalidity of a criminal conviction that has not been reversed, expunged, or called into question by the issuance of a federal writ of habeas corpus. *Heck v. Humphrey*, 512 U.S. 477, 487 (1994); *McCann v. Neilsen*, 466 F.3d 619, 620-21 (7th Cir. 2006). In such a case, a plaintiff's sole remedy is a writ of habeas corpus under § 2254.

The Court of Appeals for the Seventh Circuit held in *Booker v. Ward*, 94 F.3d 1052, 1056 (7th Cir. 1996) that *Heck* allows a false arrest claim to go forward before the defendant's conviction is invalidated. The court reasoned that "[A] wrongful arrest claim, like a number of other Fourth Amendment claims, does not inevitably undermine a conviction; one can have a successful wrongful arrest claim and still have a perfectly valid conviction." *Id.* (citations omitted). Recently, the court of appeals explained that while it is possible for a § 1983 claim based on a false arrest to "necessarily imply the invalidity of [a plaintiff's] conviction or sentence," such cases are limited to those in which the Fourth Amendment violation at issue is an element of the claim. *Wallace v. City of Chicago*, 440 F.3d 421, 428 (7th Cir. 2006) (citing *Heck*, 512 U.S. at 486 n. 6 487 (example of plaintiff convicted of

5

resisting arrest challenging the legality of the arrest)). This is not the situation in the case at hand. Because it is possible for the plaintiff to be convicted even if he was falsely arrested, this court cannot say that the plaintiff is barred from proceeding under § 1983 on his Fourth Amendment claim relating to the alleged unreasonable seizure.

## II. ANALYSIS

### A. False Arrest Claim

The Fourth Amendment does not prohibit all searches and seizures, only those that are "unreasonable." *United States v. McCarthur*, 6 F.3d 1270, 1275 (7th Cir.1993). An arrest is reasonable for Fourth Amendment purposes if the arresting officers had probable cause to believe a crime had been committed and that the arrestee was the person who committed that crime. *Michigan v. Summers*, 452 U.S. 692 (1981). Thus, the existence of probable cause bars a Fourth Amendment claim for a false arrest. *Booker*, 94 F.3d at 1057; *Jones v. Webb*, 45 F.3d 178, 181 (7th Cir.1995). In other words, a plaintiff may not recover on a Fourth Amendment claim where " 'a reasonable officer could have believed [the plaintiff's arrest] to be lawful, in light of clearly established law and the information the [arresting] officer possessed.' " *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).

> To succeed on his unlawful arrest claim . . . [the plaintiff] must prove that they arrested him without probable cause. A law enforcement officer has probable cause to arrest when the facts and circumstances within his knowledge and of which he has reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed or was committing an offense. We evaluate probable cause not on the facts as an omniscient observer would perceive them but on the facts as they would have appeared to a reasonable person in the position of the arresting officer-seeing what he saw, hearing what he heard.

6

Case 2:06-cv-01290-CNC    Filed 03/27/07    Page 6 of 10    Document 9

*Booker*, 94 F.3d at 1057-58 (citations, emphasis, and quotation marks omitted).

In the instant case, defendant Jenkins testified at the plaintiff's preliminary hearing that he and defendant Burger arrested plaintiff on a parole violation warrant whereas the plaintiff contends that no such warrant exists and that no other circumstances justified his arrest. These assertions are sufficient to state a Fourth Amendment false arrest claim and for the plaintiff to proceed on the claim.

**B. Conspiracy Claim**

The plaintiff further charges that the defendants "all conspired to obstruct justice" which lead to his incarceration. The court construes this as a claim that the defendants conspired to deprive him of his Fourth Amendment rights.

"[I]t is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with." *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002); *see also Swierkiewicza v. Sorema N.A.*, 534 U.S. 506 (2002); *Hoskins v. Poelstra*, 320 F.3d 761 (7th Cir. 2003). Based on this low threshold, the court finds that plaintiff has stated sufficient facts to support his civil conspiracy claim.

**C. Liability of Defendants Libal and Kado**

The plaintiff has not specified whether the named defendants are being sued in their official or individual capacities. Official capacity actions "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Hill v. Shelander*, 924 F.2d 1370, 1372 (7th Cir. 1991) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 [1985]); *see also, Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). A governmental entity may not be held liable unless the individual defendants acted pursuant

7

to an official policy.  *White v. City of Markham*, 310 F.3d 989, 998 (7th Cir. 2002).  Thus, in official capacity claims, the governmental entity must be the "moving force" behind the alleged deprivation.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  The plaintiff does not contend that the defendants acted pursuant to any governmental policy.  Hence, the court construes the complaint as one against the defendants in their individual capacities.

In a § 1983 action, a defendant may not be held liable individually for a constitutional violation unless he or she was involved personally in the illegal conduct, such that the defendant directed or participated in the violation.  *Doyle v. Camelot Care Centers, Inc.*, 305 F.3d 603, 614-15 (7th Cir. 2002).

### 1. Detective Libal

Here, the complaint contains no facts indicating that Detective Libal engaged in any unconstitutional conduct.  The only reference to this defendant in the preliminary hearing transcript was attached to the complaint as an exhibit.  The transcript states:

> That stipulation is that detective Libal, L-I-B-A-L, is trained in the administration of the Cobalt Thiocyanate field test which is a test used to determine the presence of cocaine and cocaine base, that Detective Libal subjected the sample of the substance that was turned over to him from Officer Burger to the Cobalt Thiocyanate field test and received a result that was positive for the presence of cocaine base.
> Further that Detective Libal weighed the substance and found total weigh[t] of 2.29 grams.

(Complaint Ex. 1 at 4.)  This testimony reveals that Detective Libal's actions were limited to testing the drugs retrieved from the plaintiff.  Even liberally construed, there is nothing in the complaint suggesting that Detective Libal directed or participated in the plaintiff's arrest.  Hence, the claim against Detective Libal must be dismissed.

8

### 2. Probation Officer Kristina Kado

The charge against defendant Kristina Kado consists solely of the following:

> On or about July 12 my P.O. Kristina Kado . . . .came to see me . . . and took a statement then I ask her about the warrant issue [sic] by her dated the first week in July as the officers stated. That it was a VOP warrant for my arrest on July 8th, 2005. Then she told me she never issued out a VOP warrant for my arrest because I never violated my parole.

(Complaint Attachment at 2.)

This allegation indicates that defendant Kado was not involved in the arrest underlying the complaint. Further, the court is baffled as to why plaintiff has named Kado as a defendant when her testimony supports his claim. Regardless, even after construing the complaint liberally, it fails to allege that defendant Kado directed or participated in the plaintiff's arrest. Consequently, defendant Kado must be dismissed from this action.

Now, therefore,

**IT IS ORDERED** that the plaintiff's motion for leave to proceed *in forma pauperis* (Doc. #2) is **GRANTED**.

**IT IS FURTHER ORDERED** that defendants Detective Libal and Kristina Kado are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b).

**IT IS FURTHER ORDERED** that the United States Marshal shall serve a copy of the complaint, the summons, and this order upon the remaining defendants pursuant to Federal Rule of Civil Procedure 4.

**IT IS FURTHER ORDERED** that the defendants respond to the complaint.

**IT IS FURTHER ORDERED** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from the plaintiff's prison trust account the $339.11

balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the clerk of the court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action.

**IT IS FURTHER ORDERED** that copies of this order be sent to the warden of the institution where the inmate is confined and to Corey F. Finkelmeyer, Assistant Attorney General, Wisconsin Department of Justice, P.O. Box 7857, Madison, Wisconsin, 53707-7857.

Plaintiff is hereby notified that he is required to send a copy of every paper or document filed with the court to the opposing parties or their attorney(s). Fed. R. Civ. P. 5(a). Plaintiff should also retain a personal copy of each document. If plaintiff does not have access to a photocopy machine, plaintiff may send out identical handwritten or typed copies of any documents. The court may disregard any papers or documents which do not indicate that a copy has been sent to each defendant or to their attorney(s).

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the Clerk's Office of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 27th day of March, 2007.

BY THE COURT

s/ C. N. CLEVERT, JR.
C. N. CLEVERT, JR.
U.S. District Judge